## In re FOULKE.

### Patent Appeal No. 3175.

Court of Customs and Patent Appeals.
Feb. 12, 1934.

Frederick Transom, of Washington, D. C. (Thomas H. Brown, of Hoboken, N. J., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 1, 3, 5, 6, 7, 9, 13, 14, 17, 20, 21, 23, 24, 34, 36 to 42, inclusive, 44, and 45 in appellant's application for a patent for an alleged invention relating to improvements in electromagnetic induction vapor discharge devices, and method for operating the same.

Claims 1, 5, 9, 17, 37, and 42 are illustrative. They read:

"1. In an electromagnetic induction vapor discharge device, a mixture of gases substantially inert with respect to each other."

"5. An electromagnetic induction vapor discharge device having a gas mixture including a permanent gas substantially inert with respect to the remainder of said gas mixture, the density of one of said gases being such that a varying electromagnetic field of practical values will produce in said device an induced voltage great enough to accelerate free electron flow whereby the number of free electrons produced will be increased."

"9. An electromagnetic induction vapor discharge tube having rare gas and mercury therein."

"17. An electromagnetic induction discharge device comprising a sealed envelope having therein a vapor source of which the vapor is capable of being brought to luminescence by passage of electric current therethrough, and another gas in said envelope which is capable of sustaining current flow at normal temperatures, said gas be- [being] substantially indifferent to said vapor."

"37. The method of operating a sealed electric discharge device containing a mixture of gases, which method consists in subjecting said mixture to the operating current to energize said gases inductively and availing of the continued energization of said gases from said source to cause the energization of one of said gases to the condition where it absorbs energy directly from said source and indirectly from said source through said other gas and gives off its characteristic radiation."

"42. An electromagnetic induction vapor discharge device having argon and mercury therein."

The references are: Fleming, 804,190, November 7, 1905; Hewitt, 843,533, February 5, 1907; Hewitt, 843,534, February 5, 1907; Hewitt, 966,204, August 2, 1910; Swiss patent 66,601, July 31, 1913; Claude (Brit.), 19,439, December 11, 1913; Austrian patent 64,380, April 10, 1914; Orange, 1,279,415, September 17, 1918; Smith, 1,534,251, April 21, 1925.

Appellant's device consists of a glass envelope or bulb containing mercury and an auxiliary permanent gas, such as argon or other of the rare gases. About the glass envelope or bulb is an energizing coil connected to an electrical supply apparatus. The electric energy flows through the energizing coil, and, according to appellant's specification, "a rapidly varying electromagnetic field is produced" within the glass envelope or bulb.

It is conceded in the brief of counsel for appellant that the structural details of appellant's device are old and well known, except, it is contended, "that the terms of the claims require a generator capable of giving an equivalent character of current, in regard to frequency values."

The Examiner stated that: "There are three methods of electrical energization of gases to cause them to emit luminous radiation. These are direct conduction between electrodes in contact with the gas, electrostatic induction between electrodes insulated from the gas and acting as condenser plates, and electromagnetic induction by placing the gas in a changing electromagnetic field of suitable strength. The claims here to be considered are for a device of the latter class."

The Hewitt references, which relate to induction vapor discharge devices, and method for operating same, disclose the use of mercury vapor, although the patentee stated, in patent No. 843,534, that other gases or vapors might be used, "care being taken to select such as will receive current under the influence of such a voltage as may be induced therein, and the light emitted thereby will correspond to the spectrum of that gas or vapor." They do not, however, disclose the use of rare or inert gases, such as argon, with mercury vapor, as does appellant, nor did the patentee secure the results obtained by appellant. However, appellant's structure is substantially the same as those disclosed by Hewitt.

With reference to the Hewitt patents, counsel for appellant stated in his brief that: "Hewitt was the founder of the practical art of tube illumination. His lamp is the only one that has stood the test of use, day in and day out. It is significant therefore, that in the above patents his genius outlines the only correct way to couple a vapor lamp to its supply circuits, as the matured experience of the art is now finding out. All make shift connections through sealed in electrodes are done away with, and yet the flow of energy to the lamp is more than ample. It is part of the teachings of this invention to first disclose how this right kind of coupling can be utilized, *not only to run the lamp after it has been started, as in the above Hewitt patents, but to make it easily self-starting and further to control its output, while running, to serve as a source of radiation with several variable and distinct characteristics."* (Italics ours.)

The patent to Orange relates to improvements in electric lamps, in which an "arc is operated between electrodes of high refractory metal, as for example, tungsten," in a sealed envelope or bulb. The patentee stated that his "lamp" was a "combination arc and incandescent lamp," which contained a gaseous atmosphere of relatively considerable pressure. The patentee used mercury vapor in combination with inert gases, such as nitrogen or argon. The primary reason for the use of those inert gases, as stated by the patentee, is:

"An atmosphere of inert gas of relatively considerable pressure depresses the evaporation of a refractory metal, such as tungsten, to such extent that it has been found practicable to increase the operating temperature to a value at which a marked increase of efficiency could be secured under certain conditions in spite of the heat losses due to gas convection currents. * * *

"A gaseous atmosphere of relatively considerable pressure is efficacious not only to reduce evaporation of the metal at a high temperature, as in the filament lamp above described, but will also reduce the sputtering or electrical disintegration of the cathode due to an arc to such extent that a lamp of small candle power having a commercially useful life may be made in which electrodes of tungsten, or equivalent refractory metal, are maintained at intensive incandescence by means of an arc. * * *

"In this case the bulb contains a quantity of mercury 11 as well as an inert gas, such as nitrogen or argon, at a relatively considerable pressure, for example, about 150 to 250 m. m. of mercury, but in some cases the gas filling other than mercury may be omitted. In that case some of the mercury preferably should be volatilized in the starting of the lamp. A lamp consuming about 50 watts may have a diameter of about ½" at the arcing region constituted by the chamber 12 and a length of about 1½".

"When as preferred a gas filling is provided in addition to the mercury, an arc is first started between the electrodes 14, 15, by a high potential discharge or any other way. The heat of this arc quickly vaporizes some of the mercury and the relatively dense mercury vapor displaces the lighter gas around the electrodes so that very soon after the arc is started the nitrogen or argon is displaced by the mercury vapor to the chamber 13 constituted by the upper part of the bulb."

The Austrian patent, No. 64,380, discloses the use of mercury vapor in combination with rare gases in electrostatic induction devices. We quote from the specification: "Slight ad-

mixtures of crypton, hydrogen, mercury vapor and others to the neon or to the helium produce in the case of the arrangement described through strong development of certain kinds of rays of its spectrum marked variations in the color gradations of the luminous gas."

The patent to Smith relates to a method and apparatus for producing luminous effects, and particularly to lamps where the illumination is secured by the passage of electric current through a gas. The patentee criticized filament and electrode lamps, and stated that one of the objects of his invention was to secure improved illumination by dispensing with the usual electrodes or filaments. The gases used by him were argon, helium, and "mixtures of gases," including hydrogen, in an envelope or bulb in a "continuously alternating magnetic field." The patentee claimed an apparatus comprising "a transformer having a high voltage primary winding, and a secondary consisting of an hermetically sealed torus of transparent insulating material containing a gas adapted to be rendered luminous by electromagnetic induction when the primary winding is energized, and means for starting the flow of current through the gas consisting of electrodes arranged entirely outside but close to the torus, and connections from the transformer to the electrodes for impressing a voltage between the electrodes sufficient to initiate ionization of the gas without causing actual electrical discharge or breakdown therethrough."

The British patent to Claude relates to "neon tubes containing mercury for illuminating and advertising purposes." The patentee stated that the heat generated by the electric current vaporized the mercury, "the blue light of which, * * * passing through a very great number of colours and shades having the most beautiful effect," gradually displaced the light produced by the neon, and filled the tube; and that such lighting effect could be reproduced by turning the current off and again applying it to the tube.

It clearly appears from the record that the use of mercury vapor in electromagnetic induction discharge devices, of the type disclosed by appellant, was old, and that it was old to use admixtures of mercury vapor and rare or inert gases, such as argon, in the types of lighting devices hereinbefore described.

The patent to Orange, although it disclosed another type of lamp, plainly suggested to one skilled in the art, we think, that, if electromagnetic vapor discharge devices, described in the patents to Hewitt, were difficult to start when mercury alone was used, the use of a rare or inert gas, such as argon, in combination with mercury, would overcome that difficulty.

Other references, hereinbefore described, show that other useful results were obtained by the use of admixtures of mercury vapor and argon, or other rare gases, in lamps. It is evident, we think, that, in view of the references of record, the advisability of using such admixtures in electromagnetic vapor discharge devices would readily occur to one skilled in the art, and we find nothing, so far as the involved claims are concerned, to indicate that, when so used, any unexpected results were obtained.

The argument advanced by appellant that the references cited are of nonanalogous arts, and therefore not proper, is, in our opinion, wholly without merit. Accordingly, we deem it unnecessary to discuss it.

We are in accord with the conclusion reached by the tribunals of the Patent Office that the appealed claims are not patentable over the prior art. The decision of the Board of Appeals is therefore affirmed.

Affirmed.